## McLAUGHLIN  v  RAWN

Ohio Appeals, 2nd Dist, Franklin Co.

No. 3118.   Decided Feb. 24, 1940.

Willis H. Liggett, Columbus, for plaintiff-appellee.

Noel L. Greenlee, Columbus, for defendant-appellant.

## OPINION

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

For reasons hereinafter stated it is necessary to have a definite understanding as to the issues between the parties as raised by the pleadings.

Plaintiff's petition, omitting the formal parts, reads as follows:

"Plaintiff further avers that on or about the 23rd day of July, 1936, the defendant entered into a contract with plaintiff for the sale of her farm of 142 acres in Madison Township, Franklin County, Ohio, filing with the plaintiff, an exclusive listing thereof, a copy of which is hereto attached, marked "Exhibit A", and made a part hereof.

"Plaintiff further says that in pursuance of said contract he advertised said farm for sale and visited various persons in an endeavor to sell the same and that among those interviewed and interested in the purchase of said farm were Rosetta Johnson, Viola and Herman Deeds; that after the plaintiff had interested the above named parties in the purchase of said farm, the defendant sold and conveyed said farm to said Rosetta Johnson, Viola and Herman Deeds for the sum of $15,000 although said defendant well knew that said parties were prospects of the plaintiff for the purchase of said farm.

"Plaintiff further says that he has performed his part of said contract by finding a purchaser for said farm; that defendant has refused and still refuses to pay all or any part of the commission called for in said contract, to-wit, $750.00, it being 5% of the purchase price of said farm.

"Wherefore plaintiff prays judgment against the defendant. Nora Mae Rawn, for the sum of $750.00, and for all other and further relief to which he may be entitled."

Defendant's answer, in the first paragraph thereof, after making certain admissions, then specifically denies certain formal allegations, but these are unimportant. The second paragraph of the answer admits the listing of the farm for sale with the McLaughlin Realty Company on or about the time alleged in the petition, but denies that the Realty Company advertised her farm for sale, other than posting a "for sale" sign in front of her residence, and denies plaintiff endeavored to make a sale and denies that he interested Rosetta Johnson, Viola and Herman Deeds in the purchase of said farm, and denies said parties were prospective purchasers obtained by him for said farm prior to the cancellation of said listing as hereinafter pleaded. In the third paragraph of the answer defendant admits that she sold a part of said farm to Rosetta Johnson, Viola and Herman Deeds on or about September 2, 1936, for the sum of $15,000.00, but she specifically denies she owes plaintiff $750.00, or any other sum; and she denies all allegations in said petition contained save and except such as are specificaly admitted to be true.

For a second defense, defendant averred in a single paragraph the following:

"For a second defense the defendant further answering adopts all the averments set forth in her first defense, as firmly as if herein rewritten, and further says the listing of said farm was on or about the 20th day of August, 1936, by mutual agreement cancelled by said McLaughlin Realty Company, and returned to her, and she was then released from any further obligations to any one as to the sale of said farm, and all her dealings with McLaughlin Realty Company were on said day terminated and ended, and the "For Sale" sign was removed from the premises by McLaughlin Realty Company."

The prayer of the answer asks that the petition be dismissed and that she may go hence without day.

Plaintiff's reply was to defendant's second defense of the answer, and, omitting the formal parts, reads as follows:

"Now comes the plaintiff and for his reply to the second defense of the answer of the defendant says that on the 11th day of August, 1936, the defendant wrote to the plaintiff advising plaintiff that she desired to withdraw her farm from the 'for sale' list as her son-in-law had left and she had rented the farm.

"Thereafter, to-wit, on August 17, 1936, the defendant came into the office of the plaintiff and said she did not desire to sell her farm but wanted to rent it, and thereupon obtained from the plaintiff the exclusive listing agreement, and gave to the plaintiff a receipt therefor.

"Plaintiff further says that during the times aforesaid the defendant was carrying on negotiations for the sale of her farm with Rosetta Johnson, Viola and Herman Deeds, and did consummate a sale for the same and said Rosetta Johnson, Viola and Herman Deeds went into possession of the premises and received a deed for the same, and that the representations of the defendant with respect to her obtaining said exclusive listing agreement were false, were known by her to be such and defendant intended plaintiff to act upon same, which the plaintiff did and that the obtaining of said exclusive listing agreement by said defendant was done through artifice, misrepresentation and fraud.

"Wherefore, plaintiff prays that said cancellation and surrender of said exclusive listing agreement be rescinded by the Court and held for naught and that plaintiff recover judgment as in his petition prayed for and for all other and further relief to which he may be entitled in the premises."

The case originally came on for trial on September 20, 1937, before His Honor Judge Henry L. Scarlett, Judge of the Common Pleas Court of Franklin County, Ohio, a jury, by agreement of the parties, being waived. Judge Scarlett did not decide this case previous to the expiration of his term in office and thereafter it was reassigned and set down for hearing before Honorable Judge Dana F. Reynolds. The trial date was March 9, 1939. The plaintiff was represented at both hearings by Mr. Willis H. Liggett, of Columbus, Ohio; and the defendant was represented at the hearing before Judge Scarlett by Mr. J. H. Fultz, of Lancaster, Ohio. At the hearing before Judge Dana F. Reynolds, on March 9, 1939, the defendant was present in person, but without counsel.

The bill of exceptions contains a historical narrative of the previous hearing before Judge Scarlett. Thereafter was a colloquy between the trial court, counsel for plaintiff and the defendant, Mrs. Rawn. Mr. Liggett, counsel for plaintiff, made an extended trial statement, in which he reviewed in substance the claimed testimony of the various witnesses appearing before Judge Scarlett. This trial statement was not taken by the court reporter at the time, but later, upon application of Mr. Liggett, the Court permitted him to redictate into the record his remembrance of his trial statement, which was then incorporated in the bill of exceptions.

Apparently, counsel for plaintiff had the view that under the state of the record his trial statement would be accepted in lieu of evidence.

We have no difficulty in determining that under the state of the record, the trial statement of counsel for plaintiff has no place in the bill of exceptions, and may be given no consideration in our determination of the cause. The only instance in which a trial statement would take the place of evidence is where the opposite party agrees to the correctness of the statement, or some part thereof, in which instance it may be considered in the nature of an agreed statement of facts. Again, it sometimes happens that the opposite party may take advantage of the trial statement and move for judg-

ment, but in no instance can a trial statement bind the opposite party without express consent.

What happened in the instant case was that the parties agreed that the cause might be submitted on the evidence taken before Judge Scarlett, and the bill of exceptions will bear no other construction, although the court in its written opinion and counsel in their brief state that it was the agreement that the Court might use so much of the testimony taken before Judge Scarlett as he desired. The present counsel for the defendant was not in the case at the time of the trial. What may have been said in the court privately and not in the hearing of the stenographer we have no means of knowing. We can only accept the bill of exceptions, certified to by the trial court, and as contained in the stipulations upon which the cause was submitted. As heretofore stated, it is clearly manifest from the bill that it was stipulated that the cause was to be determined upon the evidence taken before Judge Scarlett.

The bill of exceptions presents the testimony of only two witnesses, one for the plaintiff and one for the defendant, neither of whom had any knowledge whatever of the execution or the subsequent claimed cancellation of the listing contract. In addition to these two witnesses, there were presented exhibits, which apparently were all the exhibits presented in the hearing before Judge Scarlett.

The only witness whose evidence appears in the bill of exceptions as being called by the plaintiff was the daughter of the defendant. Prior to the sale of the farm by the defendant, the daughter and her husband resided on the premises as tenants. Her testimony was directed almost exclusively to fixing dates supporting plaintiff's claim that Mrs. Johnson and the Deeds looked over the premises and contacted the defendant, Mrs. Rawn, before the time that her contract was returned to her. This witness also testified as to the "For Sale" sign, but this was admitted in the answer, and so nothing was added through this testimony.

The bill of exceptions also contains the testimony of one Paul Grube, and none other. This witness testified that he rented the farm from Mrs. Rawn on Monday, August 10, and that on or about Friday following he saw Mrs. Johnson on the farm and talked to her. On Monday or Tuesday of the following week he saw Mrs. Johnson and the Deeds in the home of the defendant, Mrs. Rawn, and at that time he was interrogated as to how much he would take to give up his verbal rental contract. At a later date he did release the rental contract for the sum of $500.00.

The exhibits attached to the bill of exceptions are plaintiff's Exhibits A., B, C and E, and defendant's Exhibits 1 and 2.

Plaintiff's Exhibit A was the executed written contract between the plaintiff, McLaughlin Realty Company, and the defendant, Mrs. Rawn, dated July 22, 1936, and across the face is written in red lead pencil the word "cancelled". The pertinent part of this contract reads as follows:

"In consideration of your agreement to use your efforts in finding a purchaser for my property, I hereby grant you the exclusive right for a period of three months from date hereof, to sell property known as M. J. Rawn property and more fully described on the reverse side hereof for the sum of $20,000 payable cash above mtge., or at any other price, terms or exchange to which I may consent.

"If you are successful in finding a purchaser for my property, or if the same is sold or exchanged during the term of your exclusive agency, or is sold within three months after the period of this agency to any one with whom you have negotiated with respect to a sale during the period of this agency and of whom I have notice, I agree to pay you commission of _____upon the price at which same may be sold or exchanged. In event of such sale I will give evidence

or marketable title to said property and convey with full covenants of warranty and release of dower.

Mrs. M. J. Rawn
Accepted          Signature of Owner.
McLaughlin Realty Co.
By C. J. Murdock      Canal Winchester
                              Address
                              163-F-11
                              Telephone."

Exhibit B is a letter purporting to be written by Mrs. M. J. Rawn to the plaintiff Realty Company, under date of August 11, 1936, in which she states that she is writing to have withdrawn her farm from the 'for Sale' list, and the further statement that her son-in-law left her and that she has rented the farm again.

Exhibit C purports to be a receipt for the listing contract, dated August 17, 1936, and signed Nora Mae Rawn. This receipt, omitting the dates and signatures, reads as follows:

"Received of McLaughlin Realty Company the exclusive listing which I gave them on my farm as I desire not to sell same and want to rent it."

Plaintiff's Exhibit ᵀ is the original real estate contract between the defendant, Mrs. Nora Mae Rawn, party of the first part, and Rosetta Johnson, Viola Deeds and Herman Deeds, parties of the second part, for the sale and purchase of the premises in question excepting a one acre tract, upon which was located a residence. This contract was dated either August 17 or August 27, 1936. The contract bears evidence that it was originally written the 17th, and one was afterwards written over to make a two. The briefs disclose that there was considerable controvery over this question of date.

Defendant's Exhibit No. 1 is a statement from the plaintiff Realty Company to Mrs. Rawn, claiming commission in the sum of $750.00, and dated September 9, 1936.

Defendant's Exhibit No. 2 is the duplicate of the real estate contract and is identical with plaintiff's Exhibit E.

No other exhibits are presented in the bill of exceptions.

The trial court found for the plaintiff and entered judgment for the full amount.

When we started our examination of this case the anomalous situation very quickly appeared to us. We then contacted counsel for both appellant and appellee with the idea that the bill of exceptions might be corrected so as to include all the testimony taken at the hearing before Judge Scarlett and by stipulation to be accepted as the evidence before Judge Reynolds. We had noted that the trial court had certified that the bill of exceptions contained all the evidence, but we assumed that this was an error and might be corrected. Counsel for appellant insists that the Court advisedly certified the bill of exceptions as containing all of the evidence. Counsel for appellee did not respond to our notice, other than to advise that the entire matter would be left to counsel for the appellant.

But for the certificate that the transcribed evidence in the bill of exceptions contains all the evidence considered by the Court, we would have the power to ask that the bill of exceptions be corrected so as to contain all the evidence taken in the hearing before Judge Scarlett. If the bill of exceptions presents adequate proof to support the judgment, we will not disturb it for the reason that appellant presented the bill of exceptions for allowance in its present form and makes no objection thereto at any time. However, we are unable to say that the record supports the judgment of the trial court and therefore the same must be reversed. We are not permitted, as sometimes happens, to consider any omitted testimony presumably supporting the issues, since the Court certifies that the bill of exceptions contains all the testimony. We do have the power and therefore exercise it, of determining that the Court was in error in not considering all the testimony taken before Judge Scarlett as being before him and therefore instead of en-

tering final judgment, we remand with instructions to reconsider the case in the light of all the testimony.

If, perchance, the testimony taken before Judge Scarlett was not transcribed, or if the notes are lost or destroyed, or for any reason unavailable, then the cause is remanded for new trial.

We arrive at our conclusion as to the above disposition of this case for the reason that the burden of proof is on the plaintiff upon the vital issues. Had the contract not been cancelled there would be no question as to plaintiff's right to recover under the state of the pleadings.

The fact that the listing contract provided for the sale of all the premises and that the defendant omitted the one acre tract, upon which was a bungalow residence, in her sale. would not alter this situation. In making the sale of all but the one acre tract she thereby would render it impossible for the plaintiff to sell it. While the listing contract called for a selling price of $20,000.00 and a commission of 5%, yet it also provided for alteration of terms and price. The quantum sold was so substantial as to warrant the plaintiff in making claim for 5% of the consideration price of $15,000.00.

The question of cancellation presents a very important additional issue. This is brought into the case for the first time in defendant's answer. Plaintiff in his reply admits the cancellation, but alleges that it was procured through artifice and fraud.

Certainly there can be no question that parties qualified to enter into a contract could later agree to cancel it. That it was cancelled and delivered back to Mrs. Rawn is admitted under the pleadings. If there are infirmities in the contract of cancellation, it would have to be shown by evidence. The record is silent on this important question. Under the law the allegations of the reply are automatically denied, and if necessary to controvert the averments of the answer, must be supported by proof. We can see how the evidence that is contained in the record in connection with certain exhibits might be corroborative of plaintiff's claim, but unfortunately, there is nothing in the record to corroborate.

But for the fact that under the statute we are required to pass on all claimed errors, we would go no further in our disposition of this cause. For the purpose of complying with the statute, and for no other reason, we will briefly refer to appellant's claimed errors.

ASSIGNMENT OF ERROR No. 1.

"That the trial court erred in refusing to find on the issue of artifice, misrepresentation and fraud as raised by the plaintiff in his amended reply and in response to defendant's allegations contained in her answer that the listing agreement between the parties had been released and cancelled by mutual consent and agreement."

In the form stated we would not hold with counsel for appellant. We find no objections to the form in which the Court made its adjudication.

ASSIGNMENT OF ERROR No. 2.

"A. The listing agreement between the parties provided for a sale of certain specified property at a fixed price and a sale of less than the entire property described in the listing agreement, under the circumstances of this case, without the consent of the defendant would not permit recovery by the plaintiff.

B. The listing contract dated July 22, 1936, was a unilateral contract and subject to revocation at any time prior to the plaintiff presenting a bona fide purchaser ready, willing and able to purchase the property according to the terms of the agreement.

C. The contract does not lose its unilateral character by reason of the broker going forward in the furtherance of carrying out the contract, and in the event of a sale by the owner after revocation, the broker is entitled to recover no more than the reasonable

value of actual services rendered on quantum meruit, and can not recover a full commission.

D. In order to entitle a broker to recover a commission under his brokerage contract, he must produce a purchaser ready, willing and able to purchase the property involved at the price and under the terms set forth in the broker's agreement or contract before revocation of the agreement.

E. Where a broker's contract has been abandoned by him or has been revoked by the owners, before the broker submits a purchaser ready, willing and able to purchase the property under the contract terms, the owner after such abandonment or revocation may sell the property to a purchaser of the broker and not be liable to said broker for the commission specified in the contract, unless there is fraud on the part of the owner in attempting to revoke the agreement.

F. Without a finding by the Court that there was fraud on the part of the defendant in securing the formal cancellation of the broker's contract, the plaintiff would be estopped to recover commissions under the circumstances in this case where the alleged prospect of the plaintiff later purchased the property direct from the owner-defendant."

Under Assignment of Errors No. 2, specification A, we have already stated our views on this question.

Under subdivision B we ▆▆▆▆▆▆ ▆ can not agree with the claim that the listing agreement was a unilateral contract.

**Stoffregen v Roney, 15 Abs 118.**
**Sheffield v Sharp, 5 Abs 684.**
**Gross v Stark, 7 Abs 70.**

Under subdivision C we refer to what has been said under subdivision B and the earlier pages of this opinion.

Subdivision D is rather an abstract principle, proper under certain facts, but we do not see that it is applicable here.

Under subdivision E we again refer to the earlier pages of this opinion.

Under subdivision F, under the state of the record it was not necessary for the trial court to make separate findings.

ASSIGNMENT OF ERROR No. 3.
"That the Court erred in overrulling defendant's motion for a new trial."

This claim of error is well grounded.

ASSIGNMENT OF ERROR No. 4.
"Other errors appearing on the face of the record, prejudicial to the defendant-appellant."

Our reasons for reversing the judgment of the trial court may very properly come under this heading.

Entry may be presented reversing and remanding on the grounds stated.

HORNBECK, PJ. & GEIGER, J., concur.

## ON APPLICATION FOR REHEARING

No. 3118. Decided March 11, 1940.

BY THE COURT:

The above entitled cause is now being determined on appellee's application for a rehearing and also appellant's application for modification of our remand in the original opinion.

We first take up and determine appellee's application for rehearing. Counsel for appellee recognizes the infirmities in the bill of exceptions, but makes the claim that this was sought to be corrected by motion in the trial court. The present application sets out in full what purports to be specifications 1, 5 and 7 filed with the trial court as objections and exceptions to the bill of exceptions as presented. We are unable to find the original application in the papers, but do find a journal entry wherein the trial court overruled specifications 1 and 7 and sustained 2, 3, 4, 5 and 6. This journal entry is not included in the transcript of docket and journal entries. The entry is very gen-

eral in form and does not indicate the points covered and this could only be known by reference to the original application. We do find the trial court's memoranda opinion passing on the seven separate specifications. While the opinion is not an original paper and can not be considered as such it does clarify some of the otherwise anomolous situations. In the opinion the Court specifically states that the testimony of no witnesses other than Helen Bussey and Paul Grubb were considered. The certificate to the bill of exceptions also refers to the objections and states that the same were sustained in part and overruled in part, and on the last page of the certificate we find the following, "And thereupon the court received this amended bill of exceptions on the 30th day of January, 1940, and did on the 30th day of January, 1940, certify that the foregoing was all of the evidence offered, introduced and admitted on behalf of the plaintiff and on behalf of the defendant considered and referred to by the trial court on rehearing", etc. By reason of this certificate the situation is just the same as we understood it to be before releasing the original opinion. Counsel seems to think that we might order the bill of exceptions corrected, and cites §11572-a, GC. We are familiar with this section and had it in mind before releasing the original opinion. It may not be invoked for the reason that the infirmities complained of did not and do not now appear to have occurred through accident or error.

When the trial court certifies that the evidence presented in the bill of exceptions is all of the evidence received and considered by him, we may not go beyond his certificate and determine that he considered other evidence. It is apparent that he did not do so and in this we think the trial court was in error, and for that reason we ordered the case remanded to be redetermined through consideration of all the testimony that was taken before Judge Scarlett. Counsel for appellee state that they fail to understand why we did not consider the case of **Lawrence v** **The State of Ohio, 12 Oh St, p. 1,** and also call our attention to a decision of our court found in **28 Abs p. 388.** At all times we were familiar with the principles announced in the two cases, but are unable to give them application to the instant case for reasons stated in the opinion.

Had the trial court in his certificate made the statement that the bill of exceptions correctly stated a part of the testimony, then we could and would have made the finding that the judgment might have been supported by the omitted testimony. This we are unable to do where the effect of the trial court's certificate is that there was no omitted testimony.

We find no justifiable ground for granting the rehearing and the same will be overruled.

Coming now to consider appellant's application for modification of the order of remand, we adhere to our original ruling. Under the state of the record we do not think the situation demands a remand for trial anew. The parties in open court very clearly agree that the case should be determined in the last hearing through the consideration of the testimony that was taken before Judge Scarlett, and it is our conclusion that this was not done and for that reason we remand with instructions to determine the case according to such stipulations. In so doing the trial court will determine the case and have before him all the evidence taken before Judge Scarlett. We do provide, and the entry may so show, that in the event the Court Reporter's notes are not available so that the evidence in the hearing before Judge Scarlett may be transcribed, that in that event the evidence may be taken anew.

Appellant's application for modification of remand will be overruled.

Entry may be drawn accordingly.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.